809 P.2d 1149

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Charles I. FAIN, Defendant–Appellant.**

No. 18463.

Supreme Court of Idaho,
Boise, Dec.1990 Term.

March 7, 1991.

Rehearing Denied May 21, 1991.

Van G. Bishop, Nampa, for defendant-appellant.

Jim Jones, Atty. Gen. and Lynn E. Thomas, Sol. Gen. (argued), Boise, for plaintiff-respondent.

McDEVITT, Justice.

Charles I. Fain was convicted of first degree murder, lewd and lascivious conduct with a minor, and first degree kidnapping. He was sentenced to death. After an appeal to this Court, the case was remanded for factual findings on the issue of whether the defendant's due process rights were violated as a result of the failure to preserve potentially exculpatory evidence taken from the victim during the autopsy. On the next appeal to this Court, the convictions were affirmed but the death sentence was vacated and remanded for resentencing. The district judge reimposed the death penalty. On this appeal, we are asked to examine the reimposition of the death penalty.

Our standard of review in cases where the death penalty has been imposed is dictated by Idaho Code § 19–2827:

(c) With regard to the sentence of death the court shall determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and

(2) Whether the evidence supports the judge's finding of a statutory aggravating circumstance from among those enumerated in section 19–2515, Idaho Code, and

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

## WHETHER THE DISTRICT COURT PROPERLY APPLIED I.C. § 19–2515 AND ADEQUATELY DISTINGUISHED BETWEEN AGGRAVATING FACTORS

Appellant asserts that the district court improperly applied I.C. § 19–2515 in light of our holding in *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299, *cert. denied*, —— U.S. ——, 110 S.Ct. 287, 107 L.Ed.2d 267 (1989), and that the district judge did not adequately distinguish between the aggravating factors found in this case. The holding that the appellant refers to in *Charboneau* states:

I.C. § 19–2515(c) presumes that a life sentence is the sentence for first degree murder. Only if at least one of the aggravating circumstances listed in I.C. § 19–2515(g) is found to exist beyond a reasonable doubt may a sentence of death be imposed. It is only then that a defendant has the burden of coming forward with mitigating circumstances.

*Charboneau*, 116 Idaho at 154, 774 P.2d at 324.

■ Both of these assertions require us to look at I.C. § 19–2515 to determine if the district court applied the statute correctly and in accordance with the holding in *Charboneau*.

The Court in *Charboneau* was interpreting I.C. § 19–2515(c), which provides:

Where a person is convicted of an offense which may be punishable by death, a sentence of death shall not be imposed unless the court finds at least one (1) statutory aggravating circumstance. Where the court finds a statutory aggravating circumstance the court shall sentence the defendant to death unless the court finds that mitigating circumstances which may be presented outweigh the gravity of any aggravating circumstance found and make imposition of death unjust.

Here, the district court found two aggravating factors to be present, and spoke about them at the resentencing hearing:

... I said then that this was an especially heinous and cruel crime manifesting exceptional depravity, and I relayed [sic, related] it to the evidence offered. The evidence offered was that you, a man of—of thirty-five years of age, abducted a nine-year old girl off the street; took her to a remote site; sexually assaulted her, and killed her. In my mind that clearly is an aggravating circumstance. You're not talking about a killing of—of two equals, physically or otherwise. You're talking about a homicide in which a grown man, under the evidence, killed an innocent little girl after kidnapping her off the streets. I find that aggravating factor still is present under the evidence in this case. And clearly the evidence shows to me, also, the other aggravating factors that I found then still exist.

In the Findings of the Court Considering the Death Penalty, the district court specifically enumerated these aggravating factors present under I.C. § 19–2515(g):

The Court finds that the following aggravating circumstances exist beyond a reasonable doubt:

a. The murder was especially heinous, atrocious or cruel, manifesting exceptional depravity.

b. By the murder, or circumstances surrounding its commission, the defen-

dant exhibited utter disregard for human life.

The court then went on to find that the mitigating factors did not outweigh the aggravating factors and imposed the death sentence in compliance with I.C. § 19–2515, stating, "... I find that the mitigating factors that I have enumerated do not outweigh the aggravating factors when these mitigating factors are weighed against each of the aggravating factors individually."

Although the district court expressed disagreement with defendant counsel's representation of the holding in *State v. Charboneau*, he clearly set out the principles embodied in that case correctly. We hold that the district court understood the holding in *State v. Charboneau* and applied I.C. § 19–2515 correctly.

We have examined the evidence relating to aggravating and mitigating factors, and have reviewed the transcript of the sentencing hearing and the record in this case as required by Idaho Code § 19–2827. In light of this examination, we have determined that the record contained sufficient evidence to support the court's finding of the two aggravating factors.

## VICTIM IMPACT STATEMENT

We now turn to the issue of the victim impact statement contained in the presentence report. *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), prohibits the introduction of victim impact statements during the sentencing phase of a capital case as violative of the Eighth Amendment to the United States Constitution. In *Booth*, there were two types of information presented in the victim impact statement. The first type consisted of "a description of the emotional trauma suffered by the family and the personal characteristics of the victims," and the second contained the "family members' opinions and characterizations of the crimes." This information is excluded because, "its admission creates a constitutionally unacceptable risk that the jury may impose the death penalty in an arbitrary and capricious manner." *Id.* 107 S.Ct. at 2533, 2535. Both types of information are present here.

■ The victim impact statement contained in the presentence investigation report reads as follows:

Mr. and Mrs. Dennis Johnson (parents of the victim) feel that all evidence was satisfactorily presented by expert testimony. They stated the jury came back with a just verdict. Both feel that local law enforcement conducted a thorough investigation and are sure Mr. Fain is the man who assaulted and murdered their daughter. The Johnson family stated they have lost a vital unit in their family through this offense. Even though the jury has found Mr. Fain guilty, they will experience the hurt the rest of their lives. They realize this case will be appealed on behalf of the defendant. They are sorry their daughter's brutal death cannot be appealed. They strongly believe the defendant has more rights in the judicial system than the victim or the victim's family. The Johnsons also stated they truly believe Mr. Fain has totally disassociated himself from reality and has convinced himself that he is innocent of all charges. They recommend that the court pass down a strict sentence.

In addition, the parents of the victim were allowed to testify at the original sentencing hearing. Daralyn's mother testified:

Q: Could you tell the Court, Mrs. Johnson, how the loss of Daralyn Johnson has affected you personally?

A: I would say probably devastation is the best description. I think someone could probably have cut off my right arm, and I would not have missed it as much as I have my daughter. We have had a very close relationship as a family and the loss of any one of us as a family member would be devastating as it has been in losing Daralyn. It has required psychological counseling. It has required a lot of good friends being there, and family. I don't know what we would have done at times, or I—personally, me—me personally, without friends to come over and say, "Come on, you have

got to get out. You have got to, you know, go on living." Because I think the first—the first choice that you want to make is to die with that child.

* * * * * *

Q: What are your feelings in regarding what is going to happen here this morning?

A: Well, I feel that it's a very difficult situation to be in. I—I realize that it's kind of a catch–22 situation, and somebody is going to be hurt, and for that I am very sorry. However, I feel that it has been proven beyond a doubt that Mr. Fain is guilty of taking the life of my daughter, ... I feel that the death penalty is a fair penalty, and I believe that under the law it should be administered in a case such as this.

This information is clearly of the kind contemplated in *Booth* and *Charboneau*, and as such, it was error for the district court to initially admit it.

■ The next level of inquiry is to determine if the victim impact statement constitutes harmless error under the *State v. Paz*, 118 Idaho 542, 798 P.2d 1 (1990), exception. This Court, in *Paz*, relied on *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988), in holding that victim impact statements included in the presentence report while error, could, under appropriate circumstances, be harmless error.

The test to apply to determine if the use of such statements was harmless is whether this Court is assured that "it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

The only evidence in the record that the district court considered the information in the victim impact statement is one comment to the defense attorney made at the resentencing hearing, "Do you have anything that you want to offer in addition to what the record already establishes as far as the State is concerned?" This alone is not enough to establish that the district court considered the victim impact statement on resentencing. Rather, it is a routine question put to the attorneys to assure that they were given adequate opportunity to state their case.

The trial court in this case carefully weighed the evidence, including aggravating and mitigating factors. There is no indication that the victim impact statements were even considered by the court on resentencing, or that they diverted the trial court from its primary function of considering the person being sentenced and not the victim or the victim's family.

Obviously, the trial court does not make decisions in a vacuum. By the time a judge is called upon to decide on a sentence, the judge has heard the testimony and evidence put on at trial, has seen the impact of the crimes on the victim's family and community, and has been closely involved with the details of the case sometimes for years. It is evident from the findings of the trial court that the nature of this crime was such that the victim impact statements, if they were considered at all, were not a decisive factor in the decision to impose the death penalty. The facts recited by the court in passing sentence are facts that would have been known to the trial judge without the victim impact statements.

In reviewing the record in this case, we are convinced beyond a reasonable doubt that the victim impact statements in the presentence investigation report, describing the family of the victim and their recommendation of sentence, did not influence the trial court in its imposition of sentence.

## PROPORTIONALITY

Idaho Code § 19–2827(c)(3) requires this Court to determine in each capital case, "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."

Our perusal of the legislative history regarding the proportionality of sentences does not offer much guidance. The Statement of Purpose and the committee minutes for the bill that was eventually passed

and codified as I.C. § 19–2827 expressed only a concern that the Idaho statute be updated to reflect recent rulings by the United States Supreme Court:

### STATEMENT OF PURPOSE

Only a few years ago, the United States Supreme Court made new "rules" concerning imposition of the death penalty for serious crimes. So that we conformed with this U.S. Supreme Court interpretation of the federal Constitution, the Idaho Legislature enacted in 1973 our present death penalty Sections 18–4003 and 18–4004, *Idaho Code*. Then, last year, the United States Supreme Court again changed the rules relating to capital punishment—after many states, like Idaho, had acted in response to its previous decision. The Court, in five cases, set forth new, more definitive rules concerning sentencing where the death penalty was sought to be imposed. The purpose of this bill is to codify into Idaho law these present requirements imposed on the states by these most recent United States Supreme Court decisions on capital punishment so that we will conform with this latest expression of the law.

There is no mention of proportionality, or any expression by the legislature that we are required to review the proportionality of sentences with a special standard or test. The requirement that the death sentence not be disproportionate to "the penalty imposed in similar cases," is one of several considerations this Court must examine in each death penalty case. The legislature did not see fit to establish a separate standard for proportionality review of sentences when I.C. § 19–2827 was enacted.

This Court looked at the proportionality of death sentences in *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983), and reviewed several cases in which the death penalty had been imposed or could have been imposed. This Court compared the facts of these crimes with the facts of the case they were reviewing to determine whether or not the sentence was disproportionate.

■ In this case, Charles Fain kidnapped nine-year old Daralyn Johnson, sexually assaulted her, and then killed her. The atrocity of this crime can best be shown by the testimony of a former cell mate, Bobby Allen Roberson, who attributed the following to Fain:

> At this time he told me she was in the car and he was able to get her pants and her panties torn down; and he was able to go into finger molesting her, and she got away from him; and when she got away, she got out of the car and took off running. He caught her, and went back in to molesting—doing what he was doing to her; and his words, he was taking and putting his hand underneath her back and raising her up at the head. He said, "This way he was able to stick it in and get all of the way to the bottom. It made him felt [sic] better," and she again got away. This time when she got away, she tripped and fell and she hit her head, her forehead. He said, "A knot come up on her about the size of a golf ball." He wasn't satisfied and finished with what he was doing, so he went back and got his satisfaction. Then he took her and put her in the ditch. He carried her to a ditch, and held her head under water; and then he said he got in his car and left.

In considering this crime and this defendant, compared to similar crimes and similar defendants,[1] the record in this case and

---

1. *State v. Pizzuto,* 119 Idaho 742, 810 P.2d 680 (1991), *State v. Enno,* 119 Idaho 392, 807 P.2d 610 (1991), *State v. Sivak,* 119 Idaho 320, 806 P.2d 413 (1991); *State v. Paz,* 118 Idaho 542, 798 P.2d 1 (1990); *State v. Smith,* 117 Idaho 891, 792 P.2d 916 (1990); *State v. Lankford,* 116 Idaho 860, 781 P.2d 197, *stay granted,* 490 U.S. 1061, 109 S.Ct. 2058, 104 L.Ed.2d 623 (1989); *State v. Charboneau,* 116 Idaho 129, 774 P.2d 299 (1989); *McKinney v. State,* 115 Idaho 1125, 772 P.2d 1219 (1989); *State v. Fetterly,* 115 Idaho 231, 766 P.2d 701 (1988); *State v. Scroggins,* 110 Idaho 380, 716 P.2d 1152 (1985), *cert. denied,* 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986); *State v. Windsor,* 110 Idaho 410, 716 P.2d 1182 (1985), *cert. denied,* 479 U.S. 964, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986); *State v. Fetter-*

the district court's findings and conclusions in imposing the sentence, we hold that the death sentence is not excessive or disproportionate.

## OTHER ISSUES

The issue of whether the district court adequately distinguished between the two aggravating factors was raised and decided in the first appeal to this Court. *State v. Fain,* 116 Idaho 82, 774 P.2d 252 (1989). In that decision, the Court discussed the meanings of the two aggravating factors in great detail and declined to reverse on the grounds that these factors overlap and are indistinguishable. We reaffirm that ruling.

The issue of judge versus jury sentencing was raised and disposed of in *State v. Charboneau,* which analyzed Idaho, United States Supreme Court, and federal case law and rejected this argument. We also reject this issue on appeal based on our previous holding in *Charboneau.*

The defendant's final assertion is that the imposition of the death penalty in a case in which the defendant has been denied due process of law constitutes cruel and unusual punishment. This Court in *Fain I,* did not find that the defendant's due process rights were denied, therefore appellant's argument is without merit.

## CONCLUSION

After reviewing the record and transcript describing both the crime and the defendant, and after assessing the penalty imposed in this case compared with other cases in which the sentence of death was or could have been imposed, we hold that there existed an adequate basis for imposing the death penalty, and that this decision was not reached under the influence of passion or prejudice. We affirm the imposition of the death sentence.

BAKES, C.J., and JOHNSON and BOYLE, JJ., concur.

BISTLINE, Justice, dissenting:

The majority correctly notes that the victim impact statements used in this case constitute exactly the type of statements prohibited by *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and it correctly concluded that the trial court erred in admitting them. But rather than remanding the case for resentencing, as *Booth* requires, the majority diverts itself with a harmless error discussion centering on its analysis and determination as to the extent the sentencing judge may (or may not) have relied upon the victim impact statements in concluding that defendant was a qualified candidate for the ultimate sentence of death. Nowhere in *Booth* is it suggested that a reviewing court make such a determination. The rule of *Booth,* which this court has heretofore declared itself required to follow, is that when a victim impact statement is introduced into the sentencing procedure which yields a death sentence, the eighth amendment is violated; the defendant must be resentenced at a subsequent proceeding which excludes such extraneous matters. *Booth,* 482 U.S. at 509, 107 S.Ct. at 2536.

Indiscriminate use of the harmless error doctrine poses a grave danger to the rights of a criminal defendant. In 1939, the Unit-

*ly,* 109 Idaho 766, 710 P.2d 1202 (1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *State v. Beam,* 109 Idaho 616, 710 P.2d 526 (1985); *State v. Stuart,* 110 Idaho 163, 715 P.2d 833 (1985); *State v. Bainbridge,* 108 Idaho 273, 698 P.2d 335 (1985); *State v. Aragon,* 107 Idaho 358, 690 P.2d 293 (1984); *State v. McKinney,* 107 Idaho 180, 687 P.2d 570 (1984); *State v. Paradis,* 106 Idaho 117, 676 P.2d 31 (1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984); *State v. Gibson,* 106 Idaho 54, 675 P.2d 33 (1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984); *State v. Sivak,* 105 Idaho 900, 674 P.2d 396 (1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 887 (1984); *State v. Creech,* 105 Idaho 362, 670 P.2d 463 (1983); *State v. Major,* 105 Idaho 4, 665 P.2d 703 (1983); *State v. Mitchell,* 104 Idaho 493, 660 P.2d 1336, *cert. denied,* 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983); *State v. Carter,* 103 Idaho 917, 655 P.2d 434 (1981); *State v. Olin,* 103 Idaho 391, 648 P.2d 203 (1982); *State v. Osborn,* 102 Idaho 405, 631 P.2d 187 (1981); *State v. Griffiths,* 101 Idaho 163, 610 P.2d 522 (1980); *State v. Padilla,* 101 Idaho 713, 620 P.2d 286 (1980); *State v. Fuchs,* 100 Idaho 341, 597 P.2d 227 (1979); *State v. Needs,* 99 Idaho 883, 591 P.2d 130 (1979); *State v. Lindquist,* 99 Idaho 766, 589 P.2d 101 (1979).

ed States Supreme Court commented on Section 269 of the Judiciary Code, the federal statute which instituted the harmless error doctrine: "[The] Act was intended to prevent matters concerned with the mere etiquette of trials and with the formalities and minutiae of procedure from touching the merits of a verdict." *Bruno v. United States*, 308 U.S. 287, 294, 60 S.Ct. 198, 200, 84 L.Ed. 257 (1939). The scope of the harmless error doctrine has since been broadened to include constitutional errors. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Chapman* took care to note that the California harmless error statute there at issue, like the federal harmless error statute, "emphasizes an intention not to treat as harmless those constitutional errors that 'affect substantial rights' of a party." 386 U.S. at 23, 87 S.Ct. at 828.

Because the error in this case, the use of victim impact statements, impacted defendant Fain's eighth amendment right against arbitrary punishment, the error cannot be deemed harmless.