90 P.3d 298

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Faron E. LOVELACE, Defendant–Appellant.**

**Faron Earl Lovelace, Petitioner–Appellant,**

v.

**State of Idaho, Respondent.**

Nos. 24373, 26927.

Supreme Court of Idaho,
Boise, February 2004 Term.

April 22, 2004.

Molly J. Huskey, State Appellate Public Defender; Mark James Ackley, Deputy State Appellate Public Defender, Boise, for appellant. Mark James Ackley argued.

Hon. Lawrence G. Wasden, Attorney General; L. LaMont Anderson, Deputy Attorney General, Boise, for respondent. L. LaMont Anderson argued.

BURDICK, Justice.

## ON REHEARING

Following the Court's July 23, 2003, opinion affirming the conviction and remanding the case for resentencing, Lovelace and the State filed separate petitions for rehearing. This Court granted the petitions by order dated November 20, 2003. We do not revisit any of the other issues decided in the original opinion dated July 23, 2003.

## ISSUES RAISED ON REHEARING

1. Did the Court improperly review Lovelace's waiver of counsel and his request for an investigator based solely on court minutes of the pretrial hearing?

2. Did the Court misinterpret Lovelace's double jeopardy argument against resentencing?

3. Did the Court err in rejecting Lovelace's ex post facto argument, in light of new case law?

4. Is any error resulting from *Ring* harmless in that the findings necessary to impose the death penalty may be implied from the jury's verdict of first-degree murder and first-degree kidnapping?

5. Do the provisions of I.C. § 19–5306(e) and Article I, § 22 of the Idaho Constitution provide statutory and constitutional authority for the admission of victim impact evidence in capital cases?

## ANALYSIS

1. *Lovelace's waiver of counsel was valid, and the district court's decision to deny Lovelace an investigator was not error.*

■ On February 12, 2004, the Court entered an order agreeing to take judicial notice of the pretrial hearing held in the district court on July 28, 1997. Contained in the transcript of the proceedings of that date are Lovelace's request to proceed *pro se* and his request for an investigator.

Our review of the verbatim transcript confirms that the district judge informed Lovelace that he had a constitutional right to counsel and a constitutional right to represent himself. The district judge advised Lovelace of the dangers of self-representation and recommended against going to trial without the assistance of counsel. Before accepting Lovelace's waiver of counsel, the district court also inquired whether Lovelace had undergone any psychological testing and learned that he had been declared not only competent but also of above average intelligence. We conclude that the district court's warnings of the dangers and potential risks of self-representation were not constitutionally insufficient, as Lovelace argues. Applying the totality of the circumstances standard, we conclude that Lovelace's waiver of counsel was effected knowingly, voluntarily and intelligently.

In the original opinion on the appeal, this Court concluded that the district court acted within its discretion in denying Lovelace an investigator independent of the attorney advisor. Examination of the verbatim transcript, which has been made available for review on rehearing, does not alter our earlier conclusion. Accordingly, we affirm the district court's ruling providing for the attorney advisor to assist Lovelace with discovery and denying Lovelace's request for an investigator. *See State v. Olin,* 103 Idaho 391, 648 P.2d 203 (1982) (A denial of a request for investigative assistance will not be disturbed absent a showing that the trial court abused its discretion by rendering a decision which is clearly erroneous and unsupported by the circumstances of the case.)

2. *Double Jeopardy does not bar Lovelace being resentenced to death.*

■ In Lovelace's case, the findings necessary to impose the death sentence were made by a judge, in accordance with Idaho's capital sentencing scheme that provided for a judge to find the aggravating factors set forth at I.C. § 19–2515. This scheme was held to violate the Sixth Amendment, which entitles capital defendants, no less than non-capital defendants, to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment. *See Ring v. Arizona* 536 U.S. 584, 604, 122 S.Ct. 2428, 2440, 153 L.Ed.2d 556, 573 (2002).

Subsequent to the *Ring* decision, the legislature revised Idaho's capital sentencing statutes, requiring that a jury find and consider the effect of aggravating and mitigating circumstances in order to decide whether a defendant should receive a death sentence. I.C. §§ 18–8004, 19–2515(3)(b).

Lovelace argues that resentencing him to death will violate the Double Jeopardy Clause. He argues that having been convicted of first-degree murder, a lesser offense of capital murder, he cannot be prosecuted for the greater offense of murder plus aggravating circumstances in a subsequent sentencing, under double jeopardy principles. He asserts that constitutional prohibitions against double jeopardy preclude the State from trying to prove to a jury in future proceedings additional elements of capital murder, in order to satisfy the prerequisites to imposition of the death penalty.

The Court in *Ring* concluded that the Sixth Amendment requires that aggravating factors be found by a jury "because Arizona's enumerated aggravating factors operate as the functional equivalent of an element of a greater offense." *Id.* at 609, 122 S.Ct. 2428 *citing Apprendi v. New Jersey*, 530 U.S. 466, 494 n. 19, 120 S.Ct. 2348, 2365 n. 19, 147 L.Ed.2d 435, 457 n. 19 (2000). *Ring* therefore likened aggravating factors necessary to the imposition of the death penalty to sentence enhancements at issue in *Apprendi*, "which describe an increase beyond the maximum authorized statutory sentence." *Id.* at 605, 122 S.Ct. at 2440, 153 L.Ed.2d at 574. Citing Justice Thomas's concurrence in *Apprendi*, the Court in *Ring* reiterated:

> If the legislature defines some core crime then provides for increasing the punishment of that crime upon a finding of some aggravating fact[,] ... the core crime and the aggravating fact together constitute an aggravated crime, just as much as grand larceny is an aggravated form of petit larceny. The aggravating fact is an element of the aggravated crime.

*Id., citing Apprendi, supra* at 494 n. 19, 120 S.Ct. at 2365 n. 19, 147 L.Ed.2d at 457 n. 19 (Thomas, J., concurring).

In *Sattazahn v. Pennsylvania*, 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003),

Justice Scalia reiterated the analysis from *Ring* holding that aggravating circumstances that make a defendant eligible for the death penalty "operate as 'the functional equivalent of an element of a greater offense.'" *Id.* at 111, 123 S.Ct. at 739, 154 L.Ed.2d at 599 *citing Ring v. Arizona*, 536 U.S. at 609, 122 S.Ct. at 2443, 153 L.Ed.2d at 576. Characterizing "murder" as a distinct, lesser-included offense of "murder plus one or more aggravating circumstances," Justice Scalia outlined the relevance of facts or elements necessary to prove an offense to a jury, for Sixth Amendment purposes, and facts or elements necessary to determine whether a defendant is being twice tried for the same offense in violation of the Fifth Amendment's Double Jeopardy Clause. *See id.* The Court, albeit not a majority, announced:

> In the post-*Ring* world, the Double Jeopardy Clause can, and must, apply to some capital-sentencing proceedings consistent with the text of the Fifth Amendment. If a jury unanimously concludes that a State has failed to meet its burden of proving the existence of one or more aggravating circumstances, double-jeopardy protections attach to that "acquittal" on the offense of "murder plus aggravating circumstance(s)." Thus, [*Arizona v.*] *Rumsey* [,467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984)] was correct to focus on whether a factfinder had made findings that constituted an "acquittal" of the aggravating circumstances; but the reason that issue was central is not that a capital-sentencing proceeding is "comparable to a trial," ... but rather that "murder plus one or more aggravating circumstances" is a separate offense from murder *"simpliciter."*

*Sattazahn v. Pennsylvania*, 537 U.S. 101 at 112, 123 S.Ct. 732 at 740, 154 L.Ed.2d 588 at 599 (plurality).

Because the sentencing judge concluded there was sufficient evidence to find three aggravating circumstances to support imposition of the death sentence, Lovelace cannot claim that he was acquitted of the greater offense of "first-degree murder plus aggravating circumstances." Applying the standard of *Sattazahn*, the findings of the sentencing judge do not establish that the government

failed to prove one or more aggravating circumstance beyond a reasonable doubt, as they would, had the original findings been in favor of a sentence less than death. The double jeopardy protection, which bars a second prosecution on the same offense after an acquittal, is thus not implicated. *See Arizona v. Rumsey,* 467 U.S. 203, 211, 104 S.Ct. 2305, 2310, 81 L.Ed.2d 164, 171 (1984) (holding that an acquittal on the merits by the sole decision-maker in the proceeding is final and bars retrial on the same charge).

▮ The Arizona Supreme Court on remand phrased the question of whether Timothy Ring could be resentenced as whether he "was acquitted at his original trial of whatever findings were necessary to impose a death sentence." *State v. Ring,* 204 Ariz. 534, 65 P.3d 915, 930 (2003). Where Ring had been sentenced to death at his original trial, the Court ruled, "in no sense has a fact-finder concluded that the state failed to prove aggravating circumstances beyond a reasonable doubt." *Id.* at 931, 65 P.3d 915. A capital defendant whose original sentence is vacated on appeal can be resentenced to death so long as the defendant has not been "acquitted" of the death sentence. *E.g. Sattazahn,* 537 U.S. at 108, 123 S.Ct. at 737, 154 L.Ed.2d at 597; *Poland v. Arizona,* 476 U.S. 147, 151, 106 S.Ct. 1749, 1753, 90 L.Ed.2d 123, 129 (1986). In resentencing Timothy Ring, the Arizona Supreme Court explained "a defendant cannot be sentenced to death at a subsequent proceeding if 'the sentencer or reviewing court has decided that the prosecution has not proved its case that the death penalty is appropriate.'" *State v. Ring,* 65 P.3d at 930, *citing Poland v. Arizona,* 476 U.S. at 155, 106 S.Ct. at 1755, 90 L.Ed.2d at 132.

We conclude that there is no double jeopardy bar to imposition of the death penalty on Lovelace's sentencing following vacation of his original death sentence.

*3. No ex post facto error exists if Lovelace is resentenced under the revised death penalty statutes.*

▮ Lovelace argues that the transformation of statutorily defined aggravating circumstances into elements that must be proved to a jury beyond a reasonable doubt is a substantive change from the law, which governed at the time he committed the crime. He argues that the application of the newly enacted death penalty scheme, which came after his crime, trial, and sentencing, and in response to *Ring,* violates the Ex Post Facto Clause.

▮ The ex post facto doctrine prohibits a state from "retroactively alter[ing] the definitions of crimes or increas[ing] the punishment for criminal acts." *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30, 39 (1990). Provisions of the federal and state constitutions prohibit changes in the law and changes in procedure that affect matters of substance. *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). A change in law will be deemed to affect matters of substance where it increases the punishment or changes the ingredients of the offense or the ultimate facts necessary to establish guilt. *Hopt v. Utah,* 110 U.S. 574, 580, 4 S.Ct. 202, 205, 28 L.Ed. 262, 265 (1884). Decisions of "substantive criminal law" are those that reach beyond issues of procedural function and address the meaning, scope, and application of substantive criminal statutes. *Summerlin v. Stewart,* 341 F.3d 1082 (9th Cir.2003), *cert. granted* 72 U.S.L.W. 3362–63 (Dec. 2, 2003), *citing Bousley v. United States,* 523 U.S. 614, 620, 118 S.Ct. 1604, 1609, 140 L.Ed.2d 828, 838 (1998).

According to Lovelace, the 2003 death penalty statute redefined what constitutes a capital offense, is more onerous than the previous version of the statute, and thus cannot be constitutionally applied to him. This argument resembles the Ninth Circuit's assertion that "*Ring* effected a redefinition of Arizona's capital murder law, restoring, as a matter of substantive law, an earlier Arizona legal paradigm in which murder and capital murder are separate substantive offenses with different essential elements and different forms of potential punishment." *Summerlin,* 341 F.3d at 1102. At issue in *Summerlin,* however, is whether *Ring* is to be applied retroactively to federal habeas petitioners who raised the constitutional chal-

lenge in collateral post-conviction proceedings rather than on direct appeal.

The State asserts that the changes to the statute enacted in 2003 altered only the methods employed in determining whether the death penalty was to be imposed, not the elements or the facts required for imposition of the death penalty. *See Dobbert, supra.* The State dismisses *Summerlin's* conclusion that *Ring* effected a substantive change in the law as contrary to the majority of federal circuit and state courts that have decided the procedural nature of the *Ring* decision.

Idaho Code § 18–4004 defines the crime of first-degree murder and prescribes a punishment of life imprisonment or death pursuant to guidelines outlined in I.C. § 19–2515. The new section 18–4004A provides that notice of intent to seek the death penalty can be filed at any time prior to thirty days after entry of plea and shall include a listing of the statutory aggravating circumstances that the state will rely on in seeking the death penalty. Idaho Code § 19–2515(3) describes a special sentencing proceeding, where the jury, or the court if a jury is waived, finds beyond a reasonable doubt at least one statutory aggravating circumstance. Then, the defendant shall be sentenced to death unless mitigating circumstances are found to be sufficiently compelling that the death penalty would be unjust. Idaho Code § 19–2515(5) outlines the procedure for the conduct of the sentencing proceeding before the same jury that determined the defendant's guilt or, if it is impracticable, a newly constituted jury. The statutory aggravators are as they appeared in the earlier version of the statute, although the jury shall return a special verdict with regard to each statutory aggravating circumstance alleged by the state. The revised death penalty scheme only provides new procedures for determining the aggravating circumstances redefined as the functional equivalent of elements of capital murder of which Lovelace had notice.

*Summerlin* is only tangentially relevant to the issue before the Court. There, the court stated, "the Supreme Court has understood decisions of 'criminal procedure' to be those decisions that implicate how the criminal trial process functions." *Summerlin, supra* at 1100. The *Summerlin* Court distinguished those cases that reach beyond issues of procedural function and address the meaning, scope and application of substantive criminal statutes, *see id., citing Bousley v. United States,* 523 U.S. 614, 620, 118 S.Ct. 1604, 1609, 140 L.Ed.2d 828, 838 (1998), for example, where the Court decides the meaning of a criminal statute by explaining or redefining elements of an offense. *Id., citing Richardson v. United States,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). More helpful is the discussion found at note 7 in *Summerlin,* if we interpret *Ring* to extend *Apprendi* to capital cases:

> [W]e concluded that *Apprendi* did not alter, restructure, or redefine as a matter of New Jersey law the substantive elements of the underlying offense there at issue, nor did it create or resurrect a separate substantive offense.

> \* \* \*

> Rather, *Apprendi* imposed a particular procedure through which the existing " 'elements' in § 841[ ]" must be established, viz., through submission to the jury and proof beyond a reasonable doubt.

*Id.* at 1101 n. 7.

A new law that did "not alter the definition of the crime . . . of which Youngblood was convicted, nor [ ] increase the punishment for which he [was] eligible as a result of that conviction" was a procedural change. *Collins v. Youngblood,* 497 U.S. at 44, 110 S.Ct. at 2720, 111 L.Ed.2d at 41. Further, as the Arizona Supreme Court held in resentencing Ring: "The new sentencing statutes do not place the defendant in jeopardy of any greater punishment than that already imposed under the superseded statutes." *State v. Ring,* 65 P.3d at 928. Idaho's new sentencing statutes do not place Lovelace in jeopardy of any greater punishment than that prescribed under the superseded statutes. Thus, the newly enacted statutes do not violate the Ex Post Facto Clause.

*4. Harmless error analysis is inapplicable in this case.*

■ The State in its petition for rehearing asserts that *Ring* error is subject to harm-

less error analysis, based in part on the overwhelming number of decisions holding its predecessor, *Apprendi*, subject to harmless error. Arguing that there is no rational way to distinguish *Apprendi* error from *Ring* error, the State insists that the failure to submit the aggravating circumstances element to the jury is not structural and does not merit automatic reversal of the death sentence. The State argues that harmless error analysis is as applicable to *Ring* as it is to *Apprendi* error, despite the Ninth Circuit's decision in *Summerlin* holding *Ring* error to be structural.

■ The Supreme Court has applied harmless error analysis to a jury instruction that omits an essential element. *Neder v. United States,* 527 U.S. 1, 10, 119 S.Ct. 1827, 1834, 144 L.Ed.2d 35, 47 (1999). When a jury is not instructed as to an element of an offense, the standard for determining harmlessness is whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element. *Virgen–Moreno,* 265 F.3d 276, 297 (5th Cir. 2001). The plain error test on review of a trial court's failure to submit one element of an offense to a jury in a non-capital case, *see Neder, supra* and *United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), was held equally applicable to a capital case. *State v. Ring,* 204 Ariz. 534, 65 P.3d 915, 935 (2003). As the Arizona Supreme Court explained, any error under Arizona's superseded capital sentencing scheme, then, affected the submission of one element rather than the entire trial and did not render the entire trial fundamentally unfair. *Id.* The government bears the burden of showing that the error had no effect on a defendant's substantial rights. *United States v. Vonn,* 535 U.S. 55, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002).

■ This Court must first resolve whether the error is harmless beyond a reasonable doubt where the statutory aggravating factors, which render a defendant death eligible, were neither included in the instructions to the jury nor proven beyond a reasonable doubt. Where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless. *Neder* at 17, 119 S.Ct. at 1837, 144 L.Ed.2d at 52. The Court will find harmless error only if no reasonable jury could find that the State failed to prove the aggravating factors (subsections 6, 7, and 8 of I.C. § 19–2515(h)) beyond a reasonable doubt. *See State v. Ring, supra.*

With respect to the "murder committed in the perpetration of a . . . kidnapping" aggravating factor, testimony provided by Lovelace himself asserted on the one hand that Scott was still his prisoner the morning after the night spent in the cabin together; later, Lovelace claimed that the two had spent the night as friends and in the morning gone to Chimney Rock with rifles as buddies. The State is asking the Court to determine what the jury would have found had it been presented with instructions defining the language of I.C. § 19–2515(h)(7), "in the perpetration of" that was to be applied to the facts surrounding the murder. This conclusion, however, can be drawn only after the factfinder analyzes the "temporal, spatial, and motivational relationships between the capital homicide" and the kidnapping. *See State v. Ring, supra* at 941. The facts in evidence contesting that the murder was committed in perpetration of kidnapping, make application of harmless error inappropriate.

In the case of the factors of "utter disregard for human life" and "exhibiting a propensity to commit murder," they are even less amenable to harmless error review. Aggravating and mitigating factors are "of a more subjective nature" than evidence of guilt or innocence that can be objectively examined to determine whether a jury's deliberations would have come out the same way as to the underlying offense. *See United States v. Allen,* 357 F.3d 745 (8th Cir.Mo. 2004), *citing State v. Finch,* 137 Wash.2d 792, 975 P.2d 967, 1007–08 (1999), *cert. denied,* 528 U.S. 922, 120 S.Ct. 285, 145 L.Ed.2d 239 (1999).

As stated by Justice Scalia in *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), "the illogic of harmless error review" under these circumstances, is

obvious because a review could occur only if a court "hypothesize[d] a guilty verdict that was never in fact rendered." *Id.* at 279–80, 113 S.Ct. at 2081–82, 124 L.Ed.2d at 189 "Here, as in *Sullivan,* there was no jury verdict within the meaning of the Sixth Amendment and no constitutionally cognizable finding to review." *Summerlin v. Stewart,* 341 F.3d at 1117.

We conclude that *Ring* error is not susceptible to harmless-error analysis in this case. We remand the case to the district court for resentencing not inconsistent with the procedures of the newly revised death penalty statutes.

### 5. Victim impact statement advocating a sentence of death violates the Eighth Amendment.

█ Because this matter will be remanded for sentencing, we will address the issue of a victim impact statement requesting a specific sentence.

The introduction of victim impact statements during the sentencing phase of a capital trial was initially held to be violative of the Eighth Amendment to the United States Constitution. *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). In 1991, the United States Supreme Court revisited the admissibility of victim impact statements and held that the Eighth Amendment did not erect a *per se* bar prohibiting a capital sentencing jury from considering victim impact evidence that related to the victim's personal characteristics and the emotional impact of the murder on the victim's family. *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). However, the victim's family members' characterizations and opinions about the crime,

the defendant, and the appropriate sentence, continues to be excluded. *Id.* at 830 n. 2, 111 S.Ct. at 2611 n. 2, 115 L.Ed.2d at 738 This is so because "its admission creates a constitutionally unacceptable risk that the jury may impose the death penalty in an arbitrary and capricious manner." *Booth,* 482 U.S. at 503, 107 S.Ct. at 2533, 96 L.Ed.2d at 448.

Subsequent to the decision in *Payne,* Section 22 was added to Article I of the Idaho Constitution guaranteeing rights to crime victims. IDAHO CONST. art. I, § 22. Article I, § 22(6) provides that a crime victim has the right "to be heard, upon request, at all criminal justice proceedings considering a plea of guilty, sentencing, incarceration or release of the defendant, unless manifest injustice would result." This language is identical to language found in I.C. § 19–5306(1)(e).[1] Although no specific reference is made to capital sentencing proceedings, the constitutional provision and the statute, alluding to sentencing proceedings in general, necessarily provide for victims to participate in the penalty phase of a capital case.

Contained in at least two of the victim impact statements from Jeremy Scott's family members were opinions advocating that Lovelace be sentenced to death. Admission of evidence calling for imposition of the death penalty has been held to be error, but the same was deemed harmless absent proof that the victim impact statements were even considered by the sentencing judge. *See State v. Fain,* 119 Idaho 670, 672, 809 P.2d 1149, 1151 (1991). The former and current versions of I.C. § 19–2515 allow the state and the defendant to present at a sentencing hearing in a capital case "all relevant evidence in aggravation and mitigation." The victim impact evidence that Lovelace com-

---

**1.** The Idaho Legislature, in House Bill 609, sought to "provide that victim impact evidence is both relevant and admissible at the sentencing phase of a capital case ... [and] to provide guidelines for the content of that testimony." STATEMENT OF PURPOSE, RS 13784, 57th Sess., at 4 (2004). The relevant portion of the revised statute, which was declared an emergency and to be in full force and effect on and after its passage and approval, provides as follows:

Information concerning the victim and the impact of the death of the victim has had on the victim's family is relevant and admissible.

Such information shall be designed to demonstrate the victim's uniqueness as an individual human being and the resultant loss to the community by the victim's death. Characterizations and opinions about the crime, the defendant and the appropriate sentence shall not be permitted as part of any victim impact information.

H.B. 609, 57th Session, at 4 (2004). Contrary to the Statement of Purpose for this bill, that has always been the law in this area and was not changed at all in *Lovelace I.*

plains of is irrelevant to the consideration of the person being sentenced. Moreover, it clearly offends the Eighth Amendment, pursuant to *Payne, supra,* and should not be admitted for consideration by a jury upon resentencing. At this writing, *Payne's* proscription against the admission of "characterizations and opinions about the crime, the defendant and the appropriate sentence" has been codified in Idaho. *See infra* note 1.

Although we have presumed that sentencing judges were able to sort out truly relevant, admissible evidence presented in the form of victim impact statements, to allow the introduction of victim testimony espousing the death penalty for consideration by a jury is reversible error. *See generally Summerlin v. Stewart,* 341 F.3d 1082 (9th Cir. 2003).

## CONCLUSION

We conclude that Lovelace's waiver of counsel was voluntary, knowing and intelligent. We also conclude that the district court acted within its discretion in denying Lovelace's request for an investigator. Double jeopardy is not a bar to resentencing Lovelace pursuant to the procedures set forth in the revised death penalty statutes, which we hold do not violate the Ex Post Facto Clause of the federal constitution. We decline to apply a harmless error analysis and remand the case for resentencing with directions to the trial court to exclude victim impact statements calling for the death penalty, or other information that does not comply with *Booth, supra* and *Payne, supra,* in order not to violate the Eighth Amendment.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN concur.