186 P.3d 682

STATE of Idaho, Plaintiff–Respondent,

v.

Daniel M. DEISZ, Defendant–Appellant.

No. 33434.

Court of Appeals of Idaho.

May 27, 2008.

Peter C. Jones of Phelps & Assoc., Spokane, Washington, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

WALTERS, Judge Pro Tem.

Daniel M. Deisz appeals from his judgment of conviction and sentences for aggravated battery and aggravated assault. Specifically, Deisz challenges the district court's denial of his motion to suppress evidence and the district court's reliance during sentencing on a victim impact statement. For the reasons set forth below, we affirm.

## I.

### FACTS AND PROCEDURE

Deisz's wife requested a domestic protection order against Deisz and, on July 8, 2005, a magistrate issued a protection order, which contained an expiration date of July 21, 2005.[1] The order prohibited Deisz from going within 300 feet of his wife's residence or

workplace. The order also instructed the police to "supervise the removal" of Deisz's wife's "items needed for employment and necessary personal effects (*at peace officer's discretion*) from the residence." (Emphasis in original). A police officer went to Deisz's residence on July 8, 2005, and served the protection order on Deisz. According to the officer's report, Deisz refused to open the front door and informed the officer he was trespassing, but the officer informed Deisz that he had left a copy of the protection order in the door.

On the morning of July 19, 2005, officers went to Deisz's residence to conduct a welfare check in response to a report that Deisz was suicidal. Although Deisz refused to exit the residence to communicate, the officers confirmed that he was physically healthy. The officers left but, later that same day, four officers went to Deisz's residence with Deisz's wife in order to retrieve her computer and file cabinet pursuant to the protective order. The four officers had either been involved in or heard of several prior police encounters with Deisz where he had exhibited unstable behavior, and his wife informed them that Deisz was unstable and possessed firearms in the residence. The officers instructed Deisz's wife to wait at a nearby church while they went to the residence. The officers testified that one of them used a cellular telephone to repeatedly call Deisz to identify themselves as the police and to secure Deisz's cooperation. According to the officers, however, Deisz was uncooperative and repeatedly hung up. The testimony indicates that the officer who had been calling Deisz then knocked on Deisz's front door and rang the door bell for several minutes, but Deisz did not answer.

The officers decided to use a key that Deisz's wife provided in order to gain access to the residence. While one officer knocked loudly on the front door, three other officers

---

1. The district court did not set forth detailed factual findings prior to ruling on Deisz's motion to suppress. Rather, the district court set forth a limited summation of the facts based on the extensive evidence presented by the parties, including a copy of the domestic protection order, video recordings, and Deisz's affidavit, as well as transcripts of a probable cause hearing for a

search warrant, debriefing interviews of police officers, and the preliminary hearing. Other than the video recordings, all evidence presented to the district court appears to be included in the record before us. This opinion relies on the district court's limited factual findings as well as the evidence submitted to the district court and included in the appellate record.

attempted to enter the residence through an entrance in the garage. They used a credit card to unlock an exterior door to the garage and then used the key to open a door leading into a laundry room of the residence. The officers testified that, as they opened the door to the laundry room, they announced their presence. Deisz stepped around the corner of the entranceway holding a handgun and fired one shot. The bullet passed through an officer's shirt and a calculator in his shirt pocket and grazed the holster for his firearm. The officer was wearing a bulletproof vest and was not injured. Another officer testified that, at this point, Deisz pointed his gun at him, but the door swung shut after the officer who had been holding it open retreated. The police exited the garage.

While police secured the perimeter of Deisz's property and evacuated the surrounding residences, one officer left and requested a warrant from a magistrate. The officer testified as to the events leading up to and including the shooting. The magistrate issued a warrant that authorized the police to enter the residence to seize Deisz and several specified items that would indicate he committed the shooting. After the police fired gas canisters into the residence to ensure their safety, they entered the residence and took Deisz into custody. They also seized several items of personal property pursuant to the search warrant.

The state charged Deisz with one count of attempted first degree murder and one count of aggravated assault. The state also alleged that Deisz unlawfully exhibited a deadly weapon when he committed both offenses. Deisz filed a motion to suppress and argued that the initial warrantless entry into his residence to retrieve his wife's belongings violated his right against unreasonable searches and seizures and, therefore, the district court was required to suppress the evidence seized after that initial entry. The district court ruled that the protection order did not authorize the police to enter the residence to retrieve the belongings of Deisz's wife, Deisz had not consented to the entry, and any consent provided by Deisz's wife was rendered inadequate by Deisz's clear nonconsent. The district court therefore held that the initial entry was unlawful. The district court also ruled, however, that suppression would be a "distortion of the exclusionary rule" because it would be based upon "a criminal activity attendant to the circumstances of the entry, but certainly not criminal activity that was discovered in the course of an unlawful entry." The district court therefore concluded that there was no legal basis to suppress the evidence and denied Deisz's motion. Deisz entered an *Alford*[2] guilty plea to an amended count of aggravated battery, I.C. §§ 18–903, 907(b), for shooting the officer and aggravated assault, I.C. §§ 18–901, 905, for aiming his gun at another officer.

The presentence investigation report (PSI) included a victim impact statement. At the sentencing hearing, Deisz objected to the victim impact statement in the PSI on the grounds that it impermissibly recommended a specific sentence in violation of Deisz's rights under the Eighth Amendment to the United States Constitution. The district court ruled that the statement could be considered as victim input. The district court sentenced Deisz to a fifteen-year term, with a minimum period of confinement of ten years, for the aggravated battery and a concurrent five-year term, with a minimum period of confinement of two years, for the aggravated assault. Deisz appeals.

## II.

## ANALYSIS

### A. Motion to Suppress

Deisz contends that the district court erred in failing to suppress the evidence obtained after the initial, warrantless entry of his residence, including anything seen or heard by the officers during that entry. He further submits that, because the initial entry was unlawful, the subsequent search warrant based on the illegal entry was invalid and that all items seized by the police pursuant to the search warrant also should be suppressed. In response, the state asserts that

---

**2.** *See North Carolina v. Alford,* 400 U.S. 25, 91     S.Ct. 160, 27 L.Ed.2d 162 (1970).

Deisz did not properly identify which evidence he sought to have suppressed. The state also claims that the officers lawfully entered Deisz's property pursuant to the domestic protection order and, even if the entrance was unlawful, the officers did not exploit any illegality to obtain evidence.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

The Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution prohibit unreasonable searches and seizures. At the very core of the Fourth Amendment stands the right of a person to retreat into his or her own home and there be free from unreasonable governmental intrusion. *Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639, 652–53 (1980); *State v. Robinson*, 144 Idaho 496, 498–99, 163 P.3d 1208, 1210–11 (Ct.App.2007). Warrants are generally required to search a person's home unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650, 657–58 (2006); *Robinson*, 144 Idaho at 499, 163 P.3d at 1211. Generally, if evidence is not seized pursuant to a recognized exception to the warrant requirement, the evidence discovered as a result of the warrantless search must be excluded as the fruit of the poisonous tree. *State v. Van Dorne*, 139 Idaho 961, 963, 88 P.3d 780, 782 (Ct.App.2004).

**1. Evidence sought to be suppressed**

The state contends that Deisz failed to identify which evidence he sought to have suppressed. At the beginning of the hearing on the motion to suppress, however, the district court appeared to understand which evidence Deisz sought to have suppressed during the following exchange:

PROSECUTOR: The initial entry there was no warrant. I understand that is the only part really in dispute. Police withdrew after the shooting. Later on there was a warrant when they went back but, as I understand it, there was only the initial contact.

[DEFENSE COUNSEL]: And I think all the evidence used to obtain the subsequent warrant came from the initial entry. So—

THE COURT: Right.

[DEFENSE COUNSEL]:—our position would be if that is gone, everything is gone.

THE COURT: I understand....

Later at the same hearing, the prosecutor again asserted that he was unsure which evidence Deisz sought to have suppressed when no physical evidence was seized during the initial entry. The prosecutor characterized Deisz's argument regarding the warrantless entry as "just to somehow say it is the police can't talk about the fact they got shot because this happened." Defense counsel then clarified that he sought suppression of "any and all evidence that arose after that illegal entry first onto the curtilage and then into the garage and then ultimately into the rest of the house." Counsel asserted that, even though the police obtained a search warrant, "the basis of that search warrant, if the court reviews that, would be all the evidence they obtained through the illegal entry onto my client's property." On appeal, Deisz again argues that the district court should have suppressed evidence obtained regarding the shooting because the officers were unlawfully present when they observed the shooting. Deisz specifically identifies the evidence gained during the initial entry—consistent with the prosecutor's characterization of his argument below—as the officer's testimony to the magistrate regarding the shooting. Deisz again asserts on appeal that the only

evidence supporting the warrant was obtained unlawfully and, therefore, the evidence seized pursuant to the warrant must also be suppressed.

The state's reliance on *State v. Hudson,* 133 Idaho 543, 989 P.2d 285 (1999), is misplaced. In that case, an officer stopped and arrested Hudson for driving without privileges. Hudson filed a motion to dismiss on the ground that the officer illegally stopped him. Hudson failed, however, to file a motion to suppress or to identify what evidence seized from him after the allegedly illegal traffic stop should have been suppressed. The Supreme Court held that Hudson failed to properly raise the suppression issue on appeal, and the Court was limited to a review of the evidence presented to the district court in support of probable cause in order to determine whether the district court abused its discretion in denying the motion to dismiss. *Id.* at 545, 989 P.2d at 287. In contrast, Deisz filed a motion to suppress, specifically asserted which evidence he sought to have suppressed in the trial court, and presents the same argument on appeal. We will therefore address the merits of Deisz's motion to suppress.

**2. Exploitation of illegality**

■ We need not determine whether the officers' initial, warrantless entry of Deisz's house was unlawful because we conclude that, even if the intrusion was unlawful, the officers did not exploit the intrusion to obtain any evidence. The district court appeared to rely on this ground to deny Deisz's motion to suppress when it ruled that suppression would be a "distortion of the exclusionary rule" because it would not be based upon "criminal activity that was discovered in the course of an unlawful entry." The district court also concluded that Deisz's argument for suppression would lead to a conclusion that "anytime law enforcement were to enter a residence and not lawfully be entitled to enter a residence, then the owner of that residence would have the clear and complete right to shoot and even kill that law enforcement officer with absolute impunity because of the unlawful entry."

Consistent with the district court's ruling, many courts have held that, when a person physically attacks police officers or other government agents in response to an unlawful search or seizure, the exclusionary rule does not require suppression of evidence of the attack. *See United States v. Sprinkle,* 106 F.3d 613, 619 (4th Cir.1997); *United States v. Bailey,* 691 F.2d 1009, 1017 (11th Cir.1983); *People v. Doke,* 171 P.3d 237, 239 (Colo.2007); *State v. White,* 642 So.2d 842, 844 (Fla.Dist.Ct.App.1994); *State v. Boilard,* 488 A.2d 1380, 1386 (Me.1985); *Commonwealth v. Saia,* 372 Mass. 53, 360 N.E.2d 329, 332 (1977), *People v. Daniels,* 186 Mich.App. 77, 463 N.W.2d 131, 133 (1990); *State v. Bale,* 267 N.W.2d 730, 732 (Minn.1978); *State v. Ottwell,* 239 Mont. 150, 779 P.2d 500, 502 (1989); *State v. Burger,* 55 Or.App. 712, 639 P.2d 706, 708 (1982); *State v. Miskimins,* 435 N.W.2d 217, 221 (S.D.1989); *State v. Aydelotte,* 35 Wash.App. 125, 665 P.2d 443, 447 (1983). Courts have generally concluded that the violent act "breaks the causal connection between the police illegality and the evidence of the new crime so that sufficient attenuation occurs to treat evidence of the new crime as admissible, and therefore the evidence should not be suppressed under the derivative evidence rule." *Doke,* 171 P.3d at 240. *See also* 6 Wayne R. LaFave, *Search and Seizure* § 11.4(j) (4th ed.2004).

■ Prior Idaho appellate court decisions also provide support for the district court's reasoning. In *State v. Wren,* 115 Idaho 618, 627, 768 P.2d 1351, 1360 (Ct.App.1989), we recognized that evidence of an altercation with officers would not be suppressible if it flowed from Wren's own conduct rather than from his potentially unlawful arrest. Nor is all evidence obtained by the police after an unconstitutional action suppressible, even if it would not have been obtained without the illegal action. *State v. Bainbridge,* 117 Idaho 245, 249, 787 P.2d 231, 235 (1990). Evidence or information acquired as a result of constitutionally impermissible police action will be excluded unless the causal connection between that conduct and the acquisition of the evidence has been broken. *Id.* Whether evidence has been obtained by exploiting the initial illegality is determined by looking at three factors: (1) the temporal proximity of

the illegal police conduct and the acquisition of the evidence; (2) whether there are intervening circumstances between the illegal police conduct and the acquisition of the evidence; and (3) whether the purposes and flagrancy of the official misconduct satisfy the deterrent rationale of the exclusionary rule. *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416, 426–27 (1975); *Bainbridge,* 117 Idaho at 250, 787 P.2d at 236; *State v. Schrecengost,* 134 Idaho 547, 549, 6 P.3d 403, 405 (Ct.App.2000). The three-factor *Brown* test does not require that all three factors be resolved in favor of one party. *Schrecengost,* 134 Idaho at 549, 6 P.3d at 405. The test only requires a balancing of the relative weights of all the factors, viewed together, in order to determine if the police exploited an illegality to discover evidence. *Id.*

■ Although the officers acquired evidence of Deisz's violent actions in close temporal proximity to their allegedly unlawful intrusion, this close temporal proximity is outweighed by the other factors in the *Brown* test. In *Schrecengost,* this Court held that Schrecengost's actions-grabbing contraband seized from her at jail and attempting to flush it down the toilet after an illegal arrest-were her own and were independent of any police coercion caused by the illegal arrest and search for evidence. Accordingly, the intervening circumstance factor strongly militated against suppression. *Schrecengost,* 134 Idaho at 550, 6 P.3d at 406. Likewise, Deisz's independent illegal acts of shooting one officer and aiming his gun at another were his own actions independent of any police coercion caused by the intrusion into his residence. We do not accept Deisz's assertion that the officers' intrusion was stealthy and therefore precipitated his illegal actions. Deisz averred in his affidavit that the officers did not knock or announce they were entering through the garage entrance. The record before us, however, does not contain evidence contradicting the officers' testimony that they contacted Deisz over a cellular telephone and that they announced their presence just prior to when he shot at them.[3] Finally, suppressing evidence related to Deisz's shooting at the officers would not provide any deterrent effect to illegal police conduct. The rationale of the exclusionary rule is that police officers, knowing that unlawfully discovered evidence will be excluded at a subsequent trial, will avoid illegal conduct to the best of their ability. *Id.* at 550, 6 P.3d at 406. The police in the instant case did not enter Deisz's residence with the expectation that he would shoot at them and they would obtain evidence of that criminal activity.

In sum, the causal connection between the allegedly unlawful police entry and the acquisition of the evidence of Deisz's violent attack which immediately followed that entry was broken, and the exclusionary rule does not require suppression of the evidence. A contrary ruling "would effectively give the victim of police misconduct carte blanche to respond with any means, however violent." *Doke,* 171 P.3d at 241. We hold that, even if we assume the initial entry was unlawful, the police did not exploit any illegality in order to obtain evidence, and the district court properly denied the motion to suppress.

## B. Victim Impact Statement

■ Deisz asserts that the district court's reliance on the victim impact statement provided in the PSI violated his rights under the Eighth Amendment to the United States Constitution. The officer who provided the statement was the officer at whom Deisz pointed his gun after he shot another officer. According to the PSI, the officer indicated that "Deisz's sentence should be doubled because he shot at a Peace Officer. He felt fifteen years in prison would be an appropriate sentence for the defendant." The officer did not provide a statement at the sentencing hearing. When Deisz objected to the statement, the district court indicated that it would consider the statement as victim "input," but not as an interpretation of the "law of what the court should do."

3. Even if Deisz's actions were reasonable and could support a meritorious self-defense argument at trial, the exclusionary rule would not require suppression of evidence of the shooting prior to trial based on a self-defense theory. *See Wren,* 115 Idaho at 627, 768 P.2d at 1360. *See also White,* 642 So.2d at 844; *Saia,* 360 N.E.2d at 332; *Aydelotte,* 665 P.2d at 448.

Article I, Section 22(6) of the Idaho Constitution affords victims of crime the right to "be heard, upon request, at all criminal justice proceedings considering a plea of guilty, sentencing, incarceration or release of the defendant, unless manifest injustice would result." Idaho Code Section 19-5306(1)(e) codifies that right. A "victim" is defined as "an individual who suffers direct or threatened physical, financial or emotional harm as a result of the commission of a crime." I.C. § 19-5306(5)(a). So long as manifest injustice is avoided, the sentencing court has no discretion to exclude a victim impact statement. IDAHO CONST. art. I, § 22(6); I.C. § 19-5306(1)(e). *State v. Leon,* 142 Idaho 705, 708, 132 P.3d 462, 465 (Ct. App.2006); *see also State v. Lutes,* 141 Idaho 911, 916, 120 P.3d 299, 304 (Ct.App.2005); *State v. Guerrero,* 130 Idaho 311, 312, 940 P.2d 419, 420 (Ct.App.1997).

Deisz's reliance upon *State v. Lovelace,* 140 Idaho 73, 90 P.3d 298 (2004), is misplaced. In that case, the Supreme Court held that two victim impact statements from family members advocating that Lovelace be sentenced to death violated Lovelace's rights under the Eighth Amendment and were irrelevant under Idaho's death sentence statute, I.C. § 19–2515. *Lovelace,* 140 Idaho at 80–81, 90 P.3d at 305–06. *Lovelace* was a death penalty case, unlike the present case. Deisz has provided no authority for the proposition that a sentencing recommendation in a victim impact statement would violate a defendant's Eighth Amendment rights outside of the death penalty context. Furthermore, because *Lovelace* was a death penalty case, the victim impact statements were presented to a jury, whereas here the sentencing determination lay solely with the judge. The Supreme Court distinguished cases where a judge imposes the sentence, noting "we have presumed that sentencing judges were able to sort out truly relevant, admissible evidence presented in the form of victim impact statements." *Id.* at 81, 90 P.3d at 306. Indeed, in *State v. Card,* 121 Idaho 425, 825 P.2d 1081 (1991), the victim impact statement was contained in the PSI and advocated the death penalty. The statement did not violate Card's Eighth Amendment rights, however, because the Court was satisfied

beyond a reasonable doubt that the *sentencing judge* imposed the death penalty based on the evidence and without regard to the opinion in the victim impact statement. *Id.* at 433, 825 P.2d at 1089.

In the present case, the district court ruled that the statement was admissible only as victim input and then set forth multiple reasons for Deisz's sentence based on the proper sentencing factors. Deisz has not demonstrated that the district court erred in its use of the statement.

### III.

### CONCLUSION

We conclude that the district court properly denied Deisz's motion to suppress because, even if we assume that the initial entry by the police was unlawful, the police did not exploit any illegality in order to obtain evidence of the shooting. Finally, Deisz has not demonstrated that the district court erred in its use of the victim impact statement at sentencing. Therefore, Deisz's judgment of conviction and sentences are affirmed.

Judge LANSING and Judge PERRY concur.

