816 P.2d 1023

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Walter William CHAPMAN, Jr., Defendant–Appellant.**

**No. 18595.**

Court of Appeals of Idaho.

Sept. 6, 1991.

Van G. Bishop, Nampa, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

This is an appeal from a judgment of conviction for rape following a jury trial. Walter Chapman was sentenced to an aggregate term of fifteen years, with five years fixed, and the charge of using a firearm in the commission of the rape was dismissed on a defense motion. Chapman claims ineffective assistance of counsel, asserting that his counsel's performance at trial showed a lack of experience and inadequate pretrial preparation. With regard to his sentence, Chapman contends that the district court erred in considering, as part of the presentence investigation report (PSI), a "victim impact statement" and "rapist profile" testimony. Finally, Chapman attacks the sentence and the district court's order refusing to reduce the sentence, claiming that the court ignored his efforts to rehabilitate himself. We affirm the

judgment and conviction and the order relinquishing jurisdiction.

The rape charge against Chapman stemmed from an incident which took place in the early morning hours of August 4, 1988, at the home of the victim (MD). MD was asleep on sofa pillows set out on her living room floor, with the front door unlocked, when Chapman came in, woke her and proceeded to have sexual intercourse with her. Chapman admitted that he had sexual intercourse with MD, but his defense was that the victim had consented. The facts of the night in question as told by Chapman differed significantly from MD's account of the events. However, Chapman did agree with MD that the two had met for the first time the night of August 3, 1988, at a lounge in Caldwell, Idaho, and had danced together two or three times before MD left the bar with a woman friend.

Chapman testified at trial that he had arrived at the bar shortly after 9:00 p.m., ordered a drink, then visited with his boss who had just come into the bar. The boss was apparently an acquaintance of MD. Chapman left the bar and went out to his car to smoke some marijuana, accompanied by MD. Chapman returned to the bar for a few more drinks, then went out to his car to sleep, where he was awakened by MD and her friend talking nearby. At that point, MD invited Chapman to follow them for coffee, and she led the way to her home. Chapman followed in his own car. Chapman claims that, from there, he drove the friend home and returned to MD's home where he engaged in consensual sexual relations with her.

On the other hand, MD testified that she had danced with Chapman, but that she was there only a short time before leaving to drive her friend home. The friend corroborated MD's account that they suspected they were being followed. After preparing some food for an outing that was to take place the next day, MD went to sleep, but was awakened by a man standing over her who said that he was going to have sex with her and that he was accustomed to getting what he wanted. He held his arm across her chest, and he had what she thought was a gun. When she tried to push him off, he pushed the palm of his hand down on her face to keep her down, and he forced himself on her. The incident lasted but a few minutes, and the man whom she described as Chapman left in his car that was apparently parked nearby. MD, who did not have a telephone, called the police from a convenience store across from her home. She was later taken to the hospital for an examination and treatment.

On appeal, Chapman raises as his first issue a claim that he received ineffective assistance of counsel from his court-appointed attorney in the preparation and presentation of his case. Because the ineffective assistance of counsel claim is being pursued in a direct appeal, our review is limited to the record, that is, the transcripts of the hearing on pretrial motions, the trial and the hearing on the Rule 35 motion, none of which dealt with the competency of trial counsel.

■■■ The standard to be applied to a criminal defendant's claim of ineffective assistance of counsel has been defined as a two-pronged test, where the defendant must show that his attorney's performance was deficient and that he was prejudiced by the deficiency. *Young v. State,* 115 Idaho 52, 764 P.2d 129 (Ct.App.1988), *citing Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant has the burden of identifying the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Strickland, supra* at 695, 104 S.Ct. at 2068. Further, to establish prejudice which would warrant setting aside the judgment in a criminal proceeding, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 698, 104 S.Ct. at 2070. We review the separate questions of deficiency and of prejudice as mixed questions of law and fact. *Id.* at 674, 104 S.Ct. at 2057. *Accord, Young v. State, supra; Davis v. State,* 116 Idaho 401, 775 P.2d 1243 (Ct.App.1989). "[W]e will defer

to the facts found upon substantial evidence by the trial court, but we will freely review application of the law to the facts thus found." *Davis, supra* at 406, 775 P.2d at 1248.

■ Initially, Chapman contends that trial counsel's disclosure at the pretrial bond motion that he was inexperienced was borne out not only at the motion hearing, but "plagued the defendant through the trial itself." According to Chapman, counsel's admission set the stage for his less-than-adequate performance in the presentation of the case. It has been held that "[t]he character of a particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of ineffectiveness in the absence of such an evaluation." *United States v. Cronic*, 466 U.S. 648, 665, 104 S.Ct. 2039, 2050, 80 L.Ed.2d 657 (1984). Mere inexperience of counsel is not a sufficient basis for a claim of ineffective assistance, such claim must succeed or fail on counsel's performance, not his level of experience. *State v. Aragon*, 114 Idaho 758, 761, 760 P.2d 1174, 1177 (1988).

Chapman asserts that his counsel conducted an inadequate pretrial investigation and asks us on review to evaluate his trial counsel's performance. He points to parts of the transcript where defense counsel should have objected to the admission of damaging evidence, but did not. Chapman argues that, because of inadequate pretrial preparation, his attorney was not able to avoid the admission of damaging testimony provided by the convenience store clerk and the hospital employees, who were the first to see MD after the incident and to whom she had reported that she had been raped. Chapman further asserts that it was counsel's lack of pretrial investigation which led to defense counsel's failure to call a witness, referred to only as "Bob," to secure positive testimony from another witness, LeRoy Graves, and to adequately cross-examine the state's witnesses. Chapman claims that the testimony of these defense witnesses could have corroborated his story that he and MD had been introduced by Graves and that Chapman and MD had

been seen arm-in-arm outside the bar by Bob. Chapman also claims that more effective cross-examination would have emphasized all of the inconsistencies in the testimony of MD and her friend.

■ Our review of Chapman's claim that his counsel inadequately prepared for trial, however, is made virtually impossible in that the record before us is devoid of any direct reference to trial counsel's pretrial investigation or lack thereof, other than counsel's question to two defense witnesses whether they had been previously interviewed by him. *See State v. Tucker*, 97 Idaho 4, 539 P.2d 556 (1975). The record from the trial does not reveal Bob's last name, and we do not know what efforts were made by trial counsel to obtain his testimony. Nor do we have in the record support for Chapman's claim that he wanted Bob called as a witness. However, we can discern from the record that, when asked by defense counsel whether he had introduced Chapman to MD, Graves responded that he might have, but that he was not at all certain that he had. To suggest that counsel could have elicited a more positive response from the witness, Graves, after more intensive trial preparation is speculative at best. Finally, a full reading of the transcript reveals that the inconsistencies in testimony by MD and her friend, as alluded to by Chapman, were exposed to the jury through cross-examination.

■ As to defense counsel's choice of witnesses, his manner of conducting cross-examination, and his lack of objection to the so-called damaging testimony, these points fall within "trial tactics" or "strategy choices" that are the exclusive domain of trial counsel. "This is an area where we will not second guess counsel without evidence of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation." *State v. Larkin*, 102 Idaho 231, 234, 628 P.2d 1065, 1068 (1981). *See also State v. Elisondo*, 97 Idaho 425, 426, 546 P.2d 380, 381 (1976). Chapman has not shown anything in the record to suggest that these decisions of trial counsel were the result of unreason-

able professional judgment, "outside the range of professionally competent assistance." *See Strickland v. Washington, supra* 466 U.S. at 695, 104 S.Ct. at 2068.

Chapman further claims that he was denied the effective assistance of counsel in that his trial counsel failed to file a motion to suppress Chapman's statement to the police upon his arrest. Again, Chapman bases this allegation upon counsel's lack of pretrial investigation and on Chapman's assertion that he was not given his *Miranda* rights. He argues that the arresting officer's testimony at trial, when asked whether he had read Chapman his *Miranda* rights, was "vague." Beyond these assertions, however, Chapman has not argued or cited authority in support of this assignment of error. *State v. Burris,* 101 Idaho 683, n. 1, 619 P.2d 1136, n. 1 (1980). We reject, therefore, Chapman's assertion that his statement to the police, which contradicted his testimony at trial, was subject to suppression.

The next claim of error raised by Chapman relates to the admission of the victim impact statement. Without objection, the prosecuting attorney, at the sentencing hearing was allowed to introduce MD's opinion as to what sentence Chapman should receive for his crime as well as her comments that his sentence should be at least as long as it will take her to recover from this incident. MD also testified how the rape had changed her life. Chapman contends that this testimony was improperly admitted, citing *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987); *State v. Paz,* 118 Idaho 542, 798 P.2d 1 (1990), *cert. denied,* — U.S. —, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991); and I.C.R. 32.

■ We note that *Booth* specifically, and ultimately *Paz,* have been overruled by *Payne v. Tennessee,* — U.S. —, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), which held that the Eighth Amendment erects no *per se* bar to the admission of victim impact statements in capital cases. Under *Payne,* any statements by a victim, or the victim's family, explaining his or her suffering and how the crime has affected his life are admissible for sentencing purposes even in capital cases. However, as pointed out by Justice O'Connor in her concurring opinion in *Payne,* the *Booth* opinion "also addressed another kind of victim impact evidence—opinions of the victim's family about the crime, the defendant, and the appropriate sentence," which issues were not reached in *Payne.* We can, therefore, conclude that *Booth* continues to preclude the admission of opinions of the victim's family as to the appropriate sentence in death penalty cases. In any event, Chapman's case is not a death penalty case; *Booth* and *Paz* are therefore inapplicable. The introduction of victim impact statements in other than a death penalty case has been sanctioned in Idaho by *State v. Searcy,* 118 Idaho 632, 798 P.2d 914 (1990). Similarly, Chapman's reliance on I.C.R. 32 does not support his claim of error regarding the victim impact statement. Rule 32 prescribes the contents of the PSI, but does not address the admissibility of testimony from the victim in sentencing proceedings.

■ A sentencing judge may properly conduct an inquiry broad in scope, largely unlimited, either as to the kind of information he may consider or the source from which it may come. *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *State v. Bivens,* 119 Idaho 119, 803 P.2d 1025 (Ct.App.1991). Support for such a broad inquiry during sentencing is also found in I.C. § 19-5306. In addition, the colloquy by the sentencing judge does not indicate that he relied on the victim's recommended sentence. We find no error in the admission of the victim impact statement or the victim's opinion of an appropriate sentence for Chapman.

As part of his I.C.R. 32 argument, Chapman raises another claim of error. He states that Rule 32 "prohibits the inclusion of 'conjecture and speculation' in the presentence report," and that, accordingly, it was error for the court to consider the rape profile information provided by Officer Mattox to the presentence investigator. Upon receipt of the PSI, defense counsel filed a motion to strike that part of page nine of the PSI containing Officer Mattox's

statement that Chapman's present offense, prior record, physique, and preferred clothing style correspond with the rapist profile. The sentencing judge granted that portion of defendant's motion seeking to exclude Officer Mattox's statement of opinion that Chapman met the rape profile characteristics. The court allowed Officer Mattox to testify as to general profile characteristics of a rapist. He also allowed the presentence investigator to testify about the rape profile information she obtained from Officer Mattox.

Justice Douglas, writing for the majority in *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), and cited in *State v. Ballard*, 93 Idaho 355, 359–60, 461 P.2d 250, 254–55 (1969), stated:

> It is important to realize that a trial court has much more latitude regarding information which it may consider for purposes of sentencing once a criminal defendant's guilt has been established than the court or the jury could have considered at the phase of trial in which the state is attempting to establish a defendant's guilt.

Provided that a defendant is afforded a full opportunity to present favorable evidence and to explain and rebut adverse evidence, and a reasonable opportunity to examine all of the materials contained in the PSI, the defendant and the court can be assured of the reliability and the fairness of the conclusions presented therein. *See Cunningham v. State*, 117 Idaho 428, 431, 788 P.2d 243, 246 (Ct.App.1990).

In this case, Chapman contested the inclusion in the PSI of Officer Mattox's opinion that Chapman fit the rapist profile. Counsel advised the court that he had only obtained the PSI on the Friday before the hearing and had not had sufficient time to compile rebuttal to the opinion. Counsel indicated to the court that, if the judge were to deny his motion, he would request a continuance. When the motion was granted, counsel did not pursue a request for a continuance.

■ At the sentencing hearing, Chapman's counsel was able to cross-examine Officer Mattox and the presentence investigator. In ruling on defense counsel's objection to the presentence investigator's hearsay testimony as to what information she had received from the officers, the judge reiterated that it was the court's function to draw conclusions matching the profile characteristics to this defendant; and he ruled, as he had earlier, that the "opinion" of Officer Mattox would not be admitted. After the favorable ruling on his objection, however, defense counsel himself, on cross-examination, referred to Officer Mattox's opinion, thereby introducing the opinion contained in the report that he had sought to have excluded. Consequently, we cannot say that the admission of the opinion as to how Chapman fit the characteristics of the rapist profile was error on the part of the district judge. Again, Chapman's reliance on I.C.R. 32 is misplaced because the directives therein pertain to the contents of the PSI, not to the testimony of the investigator at the sentencing hearing.

The district court sentenced Chapman on the rape charge to an aggregate term of fifteen years, with a minimum term of five years. The court retained jurisdiction for 120 days, and extended jurisdiction for another sixty days, after which time the court received a recommendation from the jurisdictional review committee that jurisdiction be dropped and that Chapman be committed to the custody of the Board of Correction to serve his sentence. Chapman disputed the committee's report and requested a hearing which was held January 29, 1990. Chapman's motion, which was treated by the court as an I.C.R. 35 motion, was denied. On appeal, Chapman challenges this order, claiming that the district court disregarded the rehabilitative efforts he had made during the retained jurisdiction period. He contends that it was an abuse of discretion for the district court to deny him probation and to order execution of the sentence.

■ We construe Chapman's argument as a challenge to the district court's decision to relinquish jurisdiction in his case. Accordingly, we conclude that our review on appeal is properly analyzed under the

standards governing retention of jurisdiction rather than the denial of Rule 35 relief. In either event, the decision is a discretionary one. The court's decision to refuse probation will not be deemed a "clear abuse of discretion" if the trial court has sufficient information to determine that the same would be inappropriate. *State v. Chapel,* 107 Idaho 193, 687 P.2d 583 (Ct. App.1984). *See also* I.C. § 19–2521.

■ At sentencing, and again in his ruling on Chapman's motion objecting to the recommendation that jurisdiction be dropped, the district judge expressed that his primary concern was the protection of society from the risk of Chapman committing another crime. *See* I.C. § 19–2521(1)(a). Underlining the seriousness of the rape charge, which caused psychological and emotional harm to the victim, the judge perceived that Chapman would require treatment and incarceration as a deterrent to future criminal conduct. *See* I.C. § 19–2521(1)(b), (d). While the judge accepted that Chapman had taken steps to rehabilitate himself by quitting drug, alcohol and tobacco use during the retained jurisdiction period, the judge was disturbed that Chapman continued to assert that the sexual act had been by consent. The judge

was persuaded by the opinion of the jurisdictional review committee that admission of guilt was a crucial step toward rehabilitation that Chapman had yet to take. *See State v. Waddell,* 119 Idaho 238, 804 P.2d 1369 (Ct.App.1991). We hold that the district court's decision to deny Chapman probation by relinquishing jurisdiction was well within its discretion.

In summary, we conclude that the defense provided by Chapman's trial counsel was compatible with the "reasonably effective assistance" standard guaranteeing his constitutional right to counsel. We find no error in the district court's rulings admitting the victim impact statement or the rape profile information at the sentencing hearing. The judgment of conviction and the order relinquishing jurisdiction are affirmed.

WALTERS, C.J., and SILAK, J., concur.