132 P.3d 462

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Abel Ramirez LEON, Defendant–Appellant.**

No. 31261.

Court of Appeals of Idaho.

Jan. 10, 2006.

Review Denied April 5, 2006.

Molly J. Huskey, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kristina M. Schindele, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Abel Ramirez Leon appeals the determinate life sentence imposed by the district court upon Leon's plea of guilty to first degree murder, Idaho Code §§ 18–4001, –4002, –4003. Leon claims the sentencing court erred in considering, as part of a victim impact statement, a video presentation with depictions of the victim and her children. Leon also argues that his sentence is excessive.

## I.

### BACKGROUND

 In May 2003, Abel Ramirez Leon ("Leon") murdered his estranged wife, Maria Evangelina Castellanoz Leon ("Angie"), by shooting her twice in the head and once in the chest. The shooting occurred in their children's bedroom after Leon dragged Angie—in view of their children and her mother—into her apartment at gunpoint. Leon pleaded guilty to first degree murder by entering an *Alford* plea,[1] in exchange for the State's agreement to not request the death penalty.

During the sentencing hearing, the State presented witnesses and introduced evidence to support its argument in aggravation. During direct examination of Angie's mother, Sylvia Flores, over Leon's objection, the court was shown a four-and-one-half minute

digital video disc (DVD) containing video and photographic images of Angie alone and with her children and other members of her family. The video portion of the DVD had contemporaneous audio recordings and the portion showing still photographs was arranged in a montage and set to music. Leon objected to the DVD, arguing that it was not an appropriate victim impact statement. The district court overruled the objection, however, admitted the DVD as a victim impact statement, and allowed it to be played during the sentencing hearing.

The district court sentenced Leon to a determinate term of life imprisonment. Leon now appeals, arguing that the DVD was not a proper victim impact statement and that his sentence is unreasonable in light of his rehabilitation potential and other mitigating factors.

## II.

### ANALYSIS

**A. Admission of the DVD as a Victim Impact Statement**

 Article I, section 22(6) of the Idaho Constitution affords victims of crime the right "[t]o be heard, upon request, at all criminal justice proceedings considering a plea of guilty, sentencing, incarceration or release of the defendant, unless manifest injustice would result," and I.C. § 19–5306(1)(e) codifies that right. A "victim" is defined as "an individual who suffers direct or threatened physical, financial or emotional harm as a result of the commission of a crime." I.C. § 19–5306(5)(a). Where the crime is a homicide, the right to be heard extends to the victim's immediate family. I.C. § 19–5306(3). In the context of sentencing, this right typically is exercised through a verbal or written statement to the sentencing

---

1. An *Alford* plea is a means by which an individual may plead guilty to a crime while not admitting guilt but acknowledging that the State possesses sufficient evidence to support a conviction if the defendant were to go to trial. As explained by the U.S. Supreme Court:

 [W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

 *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162, 171 (1970).

court that is either presented at the sentencing hearing or included within the presentence investigation report. *See, e.g., State v. Card,* 121 Idaho 425, 825 P.2d 1081 (1991) (statement included in presentence investigation report); *State v. Wickel,* 126 Idaho 578, 580, 887 P.2d 1085, 1087 (Ct.App.1994) (verbal statement at sentencing hearing). So long as manifest injustice is avoided, the sentencing court has no discretion to exclude a victim impact statement. IDAHO CONST. art. I, § 22(6); I.C. § 19–5306(1)(e). *See also State v. Guerrero,* 130 Idaho 311, 312, 940 P.2d 419, 420 (Ct.App.1997) (holding right of a crime victim to address the court at the offender's sentencing hearing is guaranteed by the Idaho Constitution and Idaho Code).

■■ Leon argues that the DVD was not admissible as a victim impact statement because it was not technically a "statement." Whether a DVD presentation containing video and photographic images is a valid exercise of a victim's rights under Article I, § 22(6) of the Idaho Constitution and I.C. § 19–5306(1)(e) is a matter of first impression in this state. These provisions confer upon victims the right to be "heard" at certain criminal justice proceedings, including sentencing. Because neither the statute nor the constitution defines what it means to be "heard," however, we must determine the limits of this right.[2] In doing so, our primary goal is to give effect to the intent underlying the constitutional and statutory provisions. *State v. Paciorek,* 137 Idaho 629, 632, 51 P.3d 443, 446 (Ct.App.2002). We begin with the literal words of the constitution and statute and give those words their plain, usual, and ordinary meaning. *State v. Parker,* 141 Idaho 775, 777, 118 P.3d 107, 109 (2005); *City of Sandpoint v. Sandpoint Indep. Highway Dist.,* 139 Idaho 65, 69, 72 P.3d 905, 909 (2003). If the words are ambiguous, however, then our task is to discern the legislative intent by examining the literal words and by considering such factors as the reasonableness of proposed constructions and

the public policy behind these laws. *Lopez v. State,* 136 Idaho 174, 178, 30 P.3d 952, 956 (2001); *State v. Rhode,* 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Knott,* 132 Idaho 476, 478, 974 P.2d 1105, 1107 (1999); *Paciorek,* 137 Idaho at 632, 51 P.3d at 446.

Here, the use of the term "heard" is ambiguous, for it has numerous implications in the law. In the context of procedural due process, for example, an individual must have an "opportunity to be heard" before the state can deprive him or her of life, liberty, or property. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 32 (1976); *Aberdeen–Springfield Canal Co. v. Peiper,* 133 Idaho 82, 91, 982 P.2d 917, 926 (1999). The procedures necessary to satisfy this right to be heard depend upon the particular situation, *id.,* and may entail a full-blown evidentiary hearing, *Goldberg v. Kelly,* 397 U.S. 254, 266–71, 90 S.Ct. 1011, 1019-22, 25 L.Ed.2d 287, 298-301 (1970), or nothing more than "an informal give-and-take." *Goss v. Lopez,* 419 U.S. 565, 584, 95 S.Ct. 729, 741, 42 L.Ed.2d 725, 740 (1975).[3] Thus, there is no steadfast meaning to the term "heard"—it may involve the presentation of evidence and the examination of witnesses, or it may be simply making a statement, or perhaps something in between.

■ The history of the victim's rights statute and constitutional provision give no support to Leon's assertion that a victim's right to be heard is limited to making a written or oral statement. Before the adoption of the victim's right amendment to the Idaho Constitution, the Idaho statutes already included a provision that afforded victims the opportunity "to address under oath, the court at sentencing." I.C. § 19–5306(1)(c) (1994). This right was regularly referred to as the right to make a "victim impact statement." *See, e.g., State v. Matteson,* 123 Idaho 622, 625, 851 P.2d 336, 339 (1993); *State v. Searcy,* 118 Idaho 632, 637, 798 P.2d 914, 919 (1990). Then, in 1994, the Idaho legislature

---

**2.** "[G]enerally, the statutory rules of construction apply to the interpretation of constitutional provisions." *State ex rel. Kempthorne v. Blaine County,* 139 Idaho 348, 350, 79 P.3d 707, 709 (2003).

**3.** We do not suggest that a victim's right to be heard is on par with an individual's due process rights—they are different creatures of the law. The comparison is used only to illustrate the wide range of meanings attributed to the term "heard."

proposed and the voters ratified article I, section 22 of the Idaho Constitution, granting victims the right to be "heard," and the legislature thereafter amended I.C. § 19–5306, using language essentially identical to article I, section 22. 1995 Idaho Sess. Laws, ch. 142. The constitutional provision authorizes the Idaho legislature "to enact laws to *define*, implement, preserve, and expand the rights guaranteed to victims in [its] provisions." (Emphasis added.) Thus, in adopting I.C. § 19–5306, the legislature could have limited the victim's right to that allowed under the previous version of the statute—the right to address the court under oath—but the legislature did not do so. It enacted no limiting definition or parameters but, rather, incorporated the term "heard" into the statute. We presume that the legislature intended the amended statute to mean something different than it previously meant; that is, something different than providing victims the opportunity to make a sworn statement at sentencing. *See Moses v. Idaho State Tax Com'n*, 118 Idaho 676, 680, 799 P.2d 964, 968 (1990) ("[W]here an amendment is made it carries with it the presumption that the legislature intended the statute thus amended to have a meaning different than theretofore accorded it."); *United Pacific Ins. Co. v. Bakes*, 57 Idaho 537, 546, 67 P.2d 1024, 1029 (1937) (same). And, if the right to be "heard" is not the same as the right to make a sworn statement, by its generality it must describe a broader right, not a narrower one. *Matteson*, 123 Idaho at 625, 851 P.2d at 339 ("When a statute's language is broad enough to include a particular subject matter, an intent to exclude it from the statute's operation must be specifically expressed."); *State v. Michael*, 111 Idaho 930, 932, 729 P.2d 405, 407 (1986) (same). Therefore, we conclude that a victim's right to be heard is not limited to only verbal or written statements under oath.

 Additionally, a broad view of a victim's right to be heard conforms with the discretion traditionally afforded a trial court to consider a wide range of information at sentencing. It is fundamental that a sentencing court may properly conduct an inquiry broad in scope, largely unlimited, either as to the kind of information it may consider or the source from which it may come. *Payne v. Tennessee*, 501 U.S. 808, 821, 111 S.Ct. 2597, 2606, 115 L.Ed.2d 720, 732 (1991); *Matteson*, 123 Idaho at 625, 851 P.2d at 339; *State v. Chapman*, 120 Idaho 466, 470, 816 P.2d 1023, 1027 (Ct.App.1991). "[T]he sentencing judge is presumably able to ascertain the relevancy and reliability of the broad range of information and material which may be presented to it during the sentencing process and to disregard the irrelevant and unreliable." *State v. Johnson*, 101 Idaho 581, 583, 618 P.2d 759, 761 (1980); *State v. Pierce*, 100 Idaho 57, 58, 593 P.2d 392, 393 (1979). In particular, a sentencing court may consider the harm caused by a crime as an important factor in exercising its discretion. *Payne*, 501 U.S. at 820, 111 S.Ct. at 2605, 115 L.Ed.2d at 732; *Card*, 121 Idaho at 432, 825 P.2d at 1088. The information conveyed by a victim exercising his or her right to be heard serves this purpose by relating the victim's personal characteristics and the impact of the murder on the victim's family. *Payne*, 501 U.S. at 830 n. 2, 111 S.Ct. at 2611 n. 2, 115 L.Ed.2d at 739 n. 2; *State v. Lovelace*, 140 Idaho 73, 80, 90 P.3d 298, 305 (2004). Such evidence is designed to show the victim's "uniqueness as an individual human being." *Payne*, 501 U.S. at 823, 111 S.Ct. at 2607, 115 L.Ed.2d at 734. The allowance of this information recognizes that "the State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family." *Id.* at 825, 111 S.Ct. at 2608, 115 L.Ed.2d at 735. Victim impact information gives the court knowledge that is helpful for determining the proper punishment and prevents relegation of the victim to the status of a "faceless stranger." *Id.*

 Under Idaho's constitution and statute, the victim's right to be heard embodies these principles and supports the sentencing court's ability to make a broad inquiry as it prepares its sentence. *Chapman*, 120 Idaho at 470, 816 P.2d at 1027. We see no reason to define or limit this right in such a way as

to preclude the use of video images and photographs to inform the court of the victim's personal characteristics and to illustrate the emotional impact of a murder on the victim's family.

Although it is conceivable that a video or photographic presentation could be so prejudicial or inflammatory in its design or content that its consideration by the sentencing court would result in "manifest injustice," that is not the case here. The DVD showed Angie interacting with her children and other family members and thus conveyed information relating to Angie's personal characteristics and gave illustration to her mother's statements concerning the murder's impact upon Angie's family. To an extent, the DVD served to convey the magnitude of the loss suffered by Angie's children, who were too young to present verbal or written statements to the court.

Leon argues that one image of Angie's children posing at her grave is "particularly damning and prejudicial." Even if we assume that this type of image could be so prejudicial as to amount to a manifest injustice, in our view this particular image—showing Angie's children smiling and cheerful— could not have inflamed the court's passion more than did the facts of the crime. *See Payne*, 501 U.S. at 832, 111 S.Ct. at 2612, 115 L.Ed.2d at 740 (O'CONNOR, J., concurring). Although the musical accompaniment arguably did not constitute a valid exercise of a victim's right to be heard, we do not find it to be unduly inflammatory or manifestly unjust. Finally, we note that the entire DVD presentation was only four-and-one-half minutes in length, and therefore offered only a "quick glimpse of the life petitioner chose to extinguish." *Id.* at 830, 111 S.Ct. at 2611, 115 L.Ed.2d at 739 (O'CONNOR, J., concurring).

We therefore hold that video and photographic images may constitute a valid exercise of a victim's right to be heard and, in particular, the DVD presentation in this case was a valid exercise of that right and did not result in manifest injustice.

**B. Excessive Sentence**

 We next consider Leon's argument that his determinate life sentence is excessive. Where a sentence is within the statutory limits, it will not be disturbed on appeal absent an abuse of the sentencing court's discretion. *State v. Hedger,* 115 Idaho 598, 604, 768 P.2d 1331, 1337 (1989). We will not conclude on review that the sentencing court abused its discretion unless the sentence is unreasonable under the facts of the case. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). In evaluating the reasonableness of a sentence, we conduct an independent review of the record, focusing on the nature of the offense and the character of the offender. *State v. Young,* 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct.App. 1991). The defendant bears the burden to show that the sentence is unreasonably harsh in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation and retribution. *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982).

Leon asserts that his fixed life sentence is unreasonable in light of his rehabilitation potential and other mitigating factors. Leon points out that his sole witness at sentencing, a psychologist, testified that Leon's behavior and attitude is attributable to the acculturation stress inherent in being a Mexican–American immigrant. Leon suggests that with counseling and rehabilitation, he might someday become a productive member of society. In addition, Leon admits to past substance abuse problems, but asserts that he can maintain gainful employment using various marketable skills. He argues that these factors warrant an opportunity to someday be eligible for parole.

We are not convinced. The heinousness of the crime, together with Leon's lack of rehabilitative potential, justifies his sentence. The circumstances of the murder are particularly egregious. Leon violated a no contact order by going to Angie's apartment. When Angie's mother arrived to pick Angie up for their morning commute to work, Angie and her children ran to the vehicle in an attempt to escape, but Leon wrestled Angie from the car and dragged her back into the apartment. Angie's mother telephoned the police, but by the time they arrived, Angie was dead, having been shot twice in the head and

once in the chest. A pathologist concluded that each wound was inflicted by a gun pressed against, or close to, her skin. This ultimate crime was only the last in a long history of violent offenses that Leon committed against Angie and others. His juvenile record included adjudications for petit theft, two counts of domestic battery, and violation of a no contact order. As an adult, he was convicted of felony possession of a controlled substance, domestic violence/violation of a protection order, stalking, and disturbing the peace. At the time of sentencing in this case, there were pending against Leon additional charges, including more domestic violence/violation of protection order charges.

Leon's claim that his potential for rehabilitation makes his sentence unreasonable draws no support from the record. Although Leon pleaded guilty, he did so through an *Alford* plea and at no point admitted guilt or accepted responsibility for the crime. In fact, in the presentence investigation report, Leon proclaimed his innocence and asserted that Angie's mother was pursuing this charge for personal gain. As the sentencing court noted, he showed no concern about the consequences for his children caused by this murder and his prior violence against Angie. Leon's denial of responsibility for the murder in the face of overwhelming evidence was mirrored in his denial that he had a problem with substance abuse even though he had a history of substantial use and had previously attended treatment. The sentencing judge found that Leon "so utterly lack[ed] rehabilitative potential that imprisonment until death is the only feasible means of protecting society" and the record fully supports this finding.

We hold that the fixed life sentence in this case is justified by the nature of the offense and the character of the offender.

### III.

### CONCLUSION

The district court did not err in allowing a DVD presentation containing video and photographic images of the victim and her family at Leon's sentencing hearing, nor did the district court abuse its discretion in sentenc-

ing Leon to a determinate term of life in prison. The judgment of conviction and sentence are therefore affirmed.

Chief Judge PERRY and Judge GUTIERREZ concur.

